**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| WARREN T. HULL, | ) Case No.: 1:16-cv-00815-BAM |
| Plaintiff, | ) |
| v. | ) **ORDER REGARDING PLAINTIFF'S** |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | ) **SOCIAL SECURITY COMPLAINT** |
| Defendant. | ) |

## INTRODUCTION

Plaintiff Warren T. Hull ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits ("DBI") under Title II of the Social Security Act.[1] The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Barbara A. McAuliffe.

The Court finds the decision of the Administrative Law Judge ("ALJ") to be supported by substantial evidence in the record as a whole and based upon proper legal standards. Accordingly, this Court affirms the agency's determination to deny benefits.

---

[1] Nancy A. Berryhill is the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is substituted for Carolyn W. Colvin as the defendant in this suit.

1

## FACTS AND PRIOR PROCEEDINGS

On November 18, 2014, Plaintiff filed an application for disability insurance benefits. AR 225-26, 227-28, 232-33.[2] Plaintiff alleged that he became disabled due to right knee replacement, left shoulder pain, depression, irritable bowel syndrome, headaches and lower back pain. AR 161, 269. Plaintiff's application was denied initially and on reconsideration. AR 161-65, 169-74. Subsequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). ALJ Vincent Misenti held a hearing on January 28, 2016, and issued an order denying benefits on February 24, 2016. AR 11-26, 31-59. Plaintiff sought review of the ALJ's decision, which the Appeals Council denied, making the ALJ's decision the Commissioner's final decision. AR 1-4, 8-10. This appeal followed.

### Hearing Testimony

The ALJ held a hearing on January 28, 2016, in Fresno, California. AR 31-59. Plaintiff appeared with his attorney, Melissa Proudian. Impartial Vocational Expert ("VE") Jose Chaparro also appeared. AR 32.

In response to questioning by the ALJ, Plaintiff testified that he receives disability from the VA for his knee, lower back, irritable bowel and shoulder. He is right handed, has a driver's license and drives approximately 3 times per month. He has had a right knee replacement and left shoulder problems. AR 36-38.

When asked about his right knee, Plaintiff reported that he has daily swelling, pain below the knee radiating down, and daily stiffness. He had a partial knee replacement in 2011, but did not experience much improvement. About a year after the surgery, he started having constant swelling and stiffness. His doctors discussed further surgery, but Plaintiff would rather not have the military do the surgery for a full knee replacement. Plaintiff also reported that he uses a brace and cane, both of which were prescribed for him. He also takes anti-inflammatories, but he tries not to take his pain medication. He rated his knee pain as a constant 4 on a scale of 1 to 10. To alleviate the pain, he ices and elevates his knee. In the last year, he saw a doctor for his knee approximately five times. AR 38-41.

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

2

When asked about his left shoulder, Plaintiff testified that he had a dislocation of his shoulder with increasing pain. He recently had bursitis surgery, and was in physical therapy twice a week, but physical therapy hurt more than it helped. He sometimes has pain when reaching for something in front of him and recently had pain when combing his hair. He takes pain medication daily, but it does not help. Plaintiff rated his left shoulder pain as a 7, and stated that he tries not to use his left shoulder to perform regular activities of daily living because it is not dependable. AR 41-43.

In response to questions about his abilities, Plaintiff testified that he could sit for fifteen to twenty minutes at a time, could stand about fifteen minutes and could walk about five minutes without pain. He could lift twenty pounds and reach over the head with his right arm, but not his left. When asked about a typical day, Plaintiff indicated that his daughter helps him dress. He does not do any household chores or tasks. He does not cook, clean, vacuum, mop, wash dishes, garden or mow the lawn. He does laundry, but will not fold it, and he will shop for groceries. He sometimes watches TV, and likes to read the newspaper and listen to the radio. He needs assistance with bathing, but can brush his teeth, comb his hair and shave. He sometimes goes to the park with his 6-year-old and attends church once a week. AR 43-48.

In response to questions from his attorney, Plaintiff testified that he uses his cane inside and outside, and he can walk up a flight of stairs with some difficulty. He typically will lie down for thirty minutes two to five times a day. He can concentrate on the TV for ten or fifteen minutes before he needs a break for one or two minutes. When asked about his depression, Plaintiff testified that he feels more excluded, needing to be alone and isolating from his family. He feels depressed daily and sometimes his medication makes him drowsy. He takes Trazodone for sleep, but it is not out of his system when he wakes up in the morning. When asked about his knee surgery, Plaintiff testified that they recommended a full knee replacement on his right knee. AR 48-51.

Following Plaintiff's testimony, the ALJ elicited testimony from VE Jose Chaparro. The VE testified that Plaintiff's past work was material handler. AR 51-52. The ALJ also asked the VE hypothetical questions. For the first hypothetical, the ALJ asked the VE to assume an individual with Plaintiff's past work capable of performing a light range of work, but could only stand or walk for four hours total, would have to use a hinged knee brace and take typical breaks, occasional left over the

3

head reaching, occasional ramps and stairs, occasional ladders and scaffolds, occasional balancing, stooping, kneeling, crouching and crawling, and no damp environments or extreme cold. The VE testified that this hypothetical person could not perform Plaintiff's past jobs, but could perform other jobs in the national economy, such as cashier II and ticket seller. AR 52-55.

For the second hypothetical, the ALJ asked the VE to assume a person with the same limitations, but eroded to sedentary RFC. The VE testified that this hypothetical individual would be able to perform all sedentary, unskilled work, such as bench work, microfilming document preparer and addresser. AR 55-56.

For the third hypothetical, the ALJ asked the VE to assume the same individual, but further eroded to sitting and standing for 15 minutes before needing a 10-minute break, walking 5 minutes before needing a 10-minute break, and no over the head reaching on the right. The VE testified that there was no work that this individual could perform. AR 56-57.

Following the ALJ's questioning, Plaintiff's counsel asked the VE to add to hypothetical one that the individual would need an additional break, unscheduled, for one hour per day. The VE testified that there would not be any work for this individual. Plaintiff's counsel also asked the VE to assume the same hypothetical person, but who needed two additional ten-minute breaks during the day, along with the unscheduled break. The VE testified that this also would eliminate all work. AR 57-58.

**Medical Record**

The relevant medical record was reviewed by the Court, and will be referenced below as necessary to this Court's decision.

**The ALJ's Decision**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff was not disabled under the Social Security Act. AR 11-26. Specifically, the ALJ found that Plaintiff had not engaged in any substantial gainful activity since December 1, 2011, his alleged onset date. AR 16. Further, the ALJ identified status-post partial right knee replacement and left shoulder pain as severe impairments. AR 16-18. Nonetheless, the ALJ determined that the severity of Plaintiff's impairments did not meet or equal any of the listed impairments. AR 18. Based

on his review of the entire record, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work, including lifting and carrying 20 pounds occasionally and 10 pounds frequently, standing and walking for four hours, and sitting for six hours in an 8-hour workday, with the following restrictions: use of a hinge knee brace, normal breaks, occasional overhead reaching with his right arm, occasional balancing, crouching, crawling, kneeling, stooping and climbing ramps and stairs, but could not work in extreme cold or damp environments. AR 18-24. With this RFC, the ALJ found that Plaintiff could not perform any past relevant work, but there were other jobs existing in significant numbers in the national economy that Plaintiff could perform. AR 24-25. The ALJ therefore concluded that Plaintiff was not disabled under the Social Security Act. AR 25-26.

## **SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Servs.*, 812 F.2d 509, 510 (9th Cir. 1987).

## **REVIEW**

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has

lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). A claimant must show that he or she has a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

## **DISCUSSION**[3]

Plaintiff contends that remand is warranted in this matter because (1) the ALJ's decision contained errors of fact, (2) the ALJ failed to properly evaluate the opinion of the consultative examiner, and (3) the ALJ erred in rejecting Plaintiff's testimony regarding the severity of his symptoms.

### I.  The ALJ Did Not Commit Reversible Factual Errors

Plaintiff contends that the facts relating to his shoulder impairment were not sufficiently understood by the ALJ, rendering the ALJ's analysis defective. Plaintiff first asserts that the ALJ's opinion contained contradictory findings that Plaintiff had the severe impairment of left shoulder pain, but a non-severe impairment of left shoulder bursitis that resulted in a bursectomy. Plaintiff argues that the medical record makes clear that Plaintiff only has a single injury to his shoulder, and the ALJ's findings are unclear as to whether Plaintiff's shoulder impairment is considered severe. (Doc. 15 at p. 9.) Plaintiff next asserts that the ALJ exhibited apparent confusion as to whether Plaintiff's right or left shoulder was at issue. In particular, Plaintiff contends that the ALJ's RFC limited Plaintiff to occasional overhead reaching with his right arm, but the medical record makes clear that Plaintiff has no issue with his right arm; it is his left arm that causes pain. (*Id.*)

Plaintiff's arguments are unpersuasive. At step two of the sequential evaluation, Plaintiff has the burden to provide evidence of a medically determinable physical or mental impairment that is

---

[3] The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits. Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

6

severe and that has lasted or can be expected to last for a continuous period of at least twelve months. *Ukolov v. Barnhart*, 420 F.3d 1002, 1004-06 (9th Cir. 2005). Courts have described step two as "a de minimis screening device [used] to dispose of groundless claims." *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005); *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (same).

Here, Plaintiff alleged that he was disabled due to left shoulder pain. AR 161, 269. In considering this allegation, the ALJ found that Plaintiff had the medically determinable severe impairment of left shoulder pain. AR 16-17. Based on that finding, and irrespective of any non-severe impairment (including left shoulder bursitis), Plaintiff met his burden at step two, and the ALJ properly proceeded to the remaining steps of the sequential evaluation.

Additionally, any error in the RFC regarding Plaintiff's shoulder appears to be typographical. As the Commissioner points out, despite identifying a RFC limitation to the right shoulder, the ALJ evaluated the evidence concerning Plaintiff's left shoulder throughout his opinion, including treatment for his left shoulder pain. AR 19, 21, 22-24. The ALJ also provided a left-shoulder limitation in his first two hypotheticals to the VE. AR 52-55. In particular, for the first hypothetical, the ALJ asked the VE to assume an individual capable of performing a light range of work with various limitations, including only "occasional left over the-head reaching." AR 54. Given the limitations in the first hypothetical, the VE testified that this person could perform other jobs in the national economy, such as cashier II and ticket seller. AR 55. For the second hypothetical, the ALJ asked the VE to assume a person with the same limitations as the first hypothetical--which included only occasional left over-the-head reaching--but was limited to sedentary work. AR 55. The VE testified that this hypothetical person could perform all sedentary, unskilled work, such as bench work, microfilming document preparer, and addresser. AR 55-56.

Based on the VE's testimony that a person whose RFC included only occasional left over-the-head reaching would be able to perform the requirements of representative occupations, such as cashier II, ticket seller, bench work, microfilming document preparer and addresser, the ALJ concluded that Plaintiff could perform other work existing in significant numbers in the national economy. AR 25. Because the ALJ relied on the VE's testimony, it is reasonable to infer that the ALJ intended to identify "left shoulder," not "right shoulder," in the RFC of his written opinion. *See*

*Batson v. Comm'r of Soc. Sec.*, 359 F.3d 1190, 1193 (9th Cir. 2004) ("the Commissioner's findings are upheld if supported by inferences reasonably drawn from the record); *see also Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989) (court may draw specific and legitimate inferences from ALJ's decision). The Court therefore finds that the apparent typographical error in the written opinion is harmless. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (ALJ's error harmless where it is "inconsequential to the ultimate nondisability determination") (citation omitted); *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("A decision of the ALJ will not be reversed for errors that are harmless."); *Jackson v. Colvin*, No. 1:14-CV-01573-EPG, 2016 WL 775929, at *9 (E.D. Cal. Feb. 29, 2016) (court declined to elevate the technical form of the ALJ's decision above its substance and deemed the ALJ's inadvertent omission of a limitation in the express recitation of RFC harmless where the decision included consideration of the omitted limitation).

## II. The ALJ Did Not Err in Evaluating the Consultative Examiner's Opinion

Plaintiff argues that the ALJ's decision is "faulty because the ALJ ignored Dr. Van Kirk's opinion that Plaintiff could not reach overhead *at all*." (Doc. 15 at p. 10) (emphasis in original).

According to the record, Dr. Dale H. Van Kirk completed a consultative orthopedic evaluation of Plaintiff on April 25, 2015. AR 554-59. Plaintiff's chief complaints included low back pain with radiation down both legs, left shoulder pain and right knee pain, but he was not taking any medication. AR 554-55. On physical examination, Plaintiff had "slight pain deep in the left shoulder joint" and his range of motion was limited. AR 557. Motor strength was normal in his upper extremities bilaterally, including grip strength. AR 557. Dr. Van Kirk diagnosed Plaintiff with, among other things, status post left shoulder dislocation with residual pain and stiffness. AR 557-58. Dr. Van Kirk opined that Plaintiff could lift and carry 10 pounds frequently, 20 pounds occasionally. Plaintiff had no manipulative limitations with his right upper extremity. With regard to his left upper extremity, Dr. Van Kirk opined that Plaintiff had no fine manipulative limitations. However, with regard to gross manipulative activities, such as reaching and handling, Dr. Van Kirk opined as follows:

> [I]f he is required to raise his arm only up to the shoulder level (an example would be lifting a box and placing it onto a table in front of him on a repetitive basis), there are no gross manipulative limitations with regard to the left upper extremity. If he is required to repetitively elevate the left arm just above the shoulder level up to approximately 110

8

> degrees, he is limited to only occasional gross manipulative activities, limited because of chronic pain in the left shoulder, as well as stiffness. If he is required to repetitively lift the left arm over his head, such as if he needed to paint the ceiling of his room or lift a box and place it onto a high shelf in a closet repetitively, he is limited to no gross manipulative activities, limited because of chronic pain in the left shoulder, as well as restriction of range of motion.

AR 558. Dr. Van Kirk also indicated that because Plaintiff's symptoms were enhanced with cold weather, Plaintiff should not be required to work in an extremely cold or damp environment. AR 559.

Plaintiff now argues that the ALJ failed to give specific and legitimate reasons for rejecting the opinion of Dr. Van Kirk that Plaintiff was precluded from all overhead reaching with the left arm. The Court disagrees.

Cases in this circuit identify three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). As a general rule, more weight should be given to the opinion of a treating source than to the opinions of doctors who do not treat the claimant. *Id.* Where a treating physician's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. *Id.* If the treating physician's opinion is contradicted by another doctor, the Commissioner must provide "specific and legitimate" reasons supported by substantial evidence in the record to reject this opinion. *Id.*

As with a treating physician, the Commissioner also must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Lester*, 81 F.3d at 830. If contradicted, the opinion of an examining physician can only be rejected for "specific and legitimate reasons" that are supported by substantial evidence in the record. *Id.* at 830-31. The opinion of a nonexamining physician alone is not substantial evidence that justifies the rejection of the opinion of either a treating or examining physician. *Id.* at 831.

In this instance, the ALJ assigned "some weight" to Dr. Van Kirk's opinion, accepting certain limitations, but rejecting other identified limitations regarding Plaintiff's ability to stand or walk. AR 22-23. An ALJ need not accept everything a physician sets forth, and may accept all, some or none of

9

the physician's opinion. *Magallanes v. Bowen*, 881 F.2d 747, 753-55 (9th Cir. 1989). Although Plaintiff argues that the ALJ rejected Dr. Van Kirk's opinion that Plaintiff could not perform any overhead reaching with the left arm, this is not correct. A careful reading of Dr. Van Kirk's opinion indicates that he precluded Plaintiff from *repetitive* overhead reaching with his left upper extremity, not occasional overhead reaching on the left. AR 588 ("If he is required to *repetitively* lift the left arm over his head, such as if he needed to paint the ceiling of his room or lift a box and place it onto a high shelf in a closet *repetitively*, he is limited to no gross manipulative activities, limited because of chronic pain in the left shoulder, as well as restriction of range of motion.") (emphasis added). As Dr. Van Kirk did not preclude Plaintiff from *all* overhead reaching with the left arm, the ALJ was not required to provide any reason for rejecting such a limitation, much less a specific and legitimate reason.

In his reply, Plaintiff contends that the ALJ himself characterized Dr. Van Kirk's opinion as limited to no overhead reaching with the left arm. Plaintiff therefore argues that there is an "existing disparity in the medical evidence – Dr. Van Kirk's opinion that Plaintiff 'never perform overhead reaching with his left arm' and the State Agency consultants' opinion that Plaintiff could perform 'occasional overhead activities with his left arm,'" and it "was incumbent upon the ALJ to resolve the conflict." (Doc. 19 at p. 4.) Contrary to Plaintiff's argument, there is no disparity in the medical evidence. The ALJ's apparent misstatement regarding Dr. Van Kirk's opinion does not alter the underlying substance of Dr. Van Kirk's opinion nor does it create any disparity in the medical evidence itself. As discussed above, Dr. Van Kirk did not opine that Plaintiff could *never* perform overhead activities with his left arm.

Further, the determination that Plaintiff was limited to occasional overhead reaching with his left arm is supported by substantial evidence in the record, including not only Dr. Van Kirk's opinion, but also the opinions of the state agency examiners. For instance, in evaluating Plaintiff's reaching limitation, the ALJ assigned "substantial weight" to the opinions of the state agency medical consultants, Dr. I. Ocrant and Dr. K. Mohan, both of whom determined that Plaintiff was limited to only occasional overhead activities with his left arm. AR 23, 142-43, 155-56.

///

### III. Plaintiff's Subjective Testimony

Plaintiff argues that the ALJ failed to provide specific, clear and convincing reasons for discounting Plaintiff's subjective testimony that he could not reach overhead with his left arm at all and could only lift his arm to shoulder level with pain. (ECF No. 15 at pp. 12.)

In deciding whether to admit a claimant's subjective complaints of pain, the ALJ must engage in a two-step analysis. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); *Batson*, 359 F.3d at 1196. First, the claimant must produce objective medical evidence of his impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Garrison*, 759 F.3d at 1014. If the claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of his symptoms only by offering specific, clear and convincing reasons for doing so. *Id.* at 1015.[4]

Here, the ALJ found that Plaintiff satisfied the first step of the analysis and made no finding of malingering. At the second step of the analysis, however, the ALJ determined that "the claimant's statements concerning the intensity, persistence and limiting effects of [his] symptoms were not entirely credible . . . ." AR 20. Therefore, the ALJ's reasons for discounting the alleged severity of Plaintiff's symptoms must be specific, clear and convincing. *Brown-Hunter v. Colvin*, 806 F.3d 487, 492-93 (9th Cir. 2015).

The Court finds that the ALJ provided specific, clear and convincing reasons for discounting Plaintiff's testimony regarding his left arm limitations. Recognizing that Plaintiff's allegations of disability due to pain were primarily based on subjective symptoms, the ALJ found Plaintiff's credibility to be a material factor. To that end, the ALJ determined that Plaintiff's course of medical treatment did not bolster his credibility, nor did his medication use. AR 22. With respect to his left arm limitations, the ALJ noted that Plaintiff told Dr. Van Kirk that he was not taking any medications despite allegations of disabling pain. AR 21, 555. In evaluating a claimant's testimony, an ALJ may

---

[4] At the time of the ALJ's decision, Social Security Ruling ("SSR") 96-7p, 1996 WL 374186, was in effect and explained the factors to be considered in assessing credibility. SSR 96-7p was superseded on March 28, 2016, by SSR 16-3p, 2017 WL 4790249. However, an adjudicator will apply SSR 16-3p only when making decisions on or after March 28, 2016, and federal courts will review that decision using the rules that were in effect at the time the decision issued. *Id.* at 49468, n. 27. The decision in this case was rendered prior to March 28, 2016, before SSR 16-3p became effective.

properly consider "unexplained or inadequately explained failure . . . to follow a prescribed course of treatment." *See Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012), citing *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). The ALJ also considered that Plaintiff's left shoulder pain had been controlled when taking medications. AR 21, 610. An ALJ may consider the effectiveness of Plaintiff's medications in assessing Plaintiff's credibility. *See Celaya v. Halter*, 332 F.3d 1177, 1181 (9th Cir. 2003).

The ALJ next found that "the claimant's allegations that he was unable to sustain the physical demands of competitive employment were less than fully credible because the objective clinical findings did not support the limitations alleged" and there were "few objective findings in support of the claimant's allegations." AR 20. Although lack of medical evidence cannot form the sole basis for discounting a claimant's testimony, it is a factor that the ALJ can consider. *Burch*, 400 F.3d at 681. With respect to Plaintiff's allegations concerning his left arm limitations, the ALJ considered record evidence from Dr. Van Kirk's evaluation that he had slight pain deep in the left shoulder joint and limited range of motion, but normal motor and grip strength. AR 21, 557. Additionally, the ALJ noted that Plaintiff's left shoulder x-ray revealed no bony abnormalities. AR 21, 609. Also, the ALJ correctly pointed out that Dr. Serio Ilic, Plaintiff's surgeon, agreed there was a lack of objective findings regarding Plaintiff's left shoulder pain, noting Plaintiff "had a chronic left shoulder pain for a long time with not many objective findings, the MRI was fairly negative." AR 21, 714. The ALJ further acknowledged that Plaintiff had undergone shoulder surgery, with no evidence of any tears. AR 21, 715.

Additionally, the ALJ considered record evidence that Plaintiff went on a vacation after his alleged onset date. While the ALJ recognized that a vacation and a disability "are not necessarily mutually exclusive," the ALJ also found that Plaintiff's decision to go on vacation "suggest[ed] that the alleged symptoms and limitations may have been overstated." AR 22. An ALJ may permissibly consider a claimant's ability to travel in making an adverse credibility determination. *Tommasetti*, 533 F.3d 1035, 1040 (9th Cir. 2008). Further, an ALJ may consider inconsistencies between Plaintiff's statements regarding his subjective symptoms and his conduct in evaluating credibility. *Molina*, 674 F.3d at 1112 (ALJ may use ordinary techniques of credibility evaluation and consider inconsistencies

between testimony and the claimant's conduct); *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002) (ALJ may consider inconsistencies either in claimant's testimony or between his testimony and his conduct). Thus, the ALJ properly considered Plaintiff's decision to take a vacation when assessing credibility.

Accordingly, the Court finds that the ALJ did not err in his assessment of Plaintiff's subjective complaints.

## **CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court **DENIES** Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is **DIRECTED** to enter judgment in favor of Defendant Nancy A. Berryhill, Acting Commissioner of Social Security, and against Plaintiff Warren Hull.

IT IS SO ORDERED.

Dated: **January 11, 2018**          /s/ *Barbara A. McAuliffe*
                                    UNITED STATES MAGISTRATE JUDGE